BRUNNER v. MOSNER.

(Supreme Court, Appellate Division, First Department.   December 7, 1906.)

MASTER AND SERVANT—COMPENSATION CONTRACT—EVIDENCE.

In an action by a cousin of defendant, living as a member of his family, under an alleged contract as to compensation for services rendered, evidence *held* sufficient to support a finding that there was such a contract after a certain date, but insufficient to support a finding that any existed prior thereto.

Appeal from Trial Term, New York County.

Action by Frances Brunner against Frank Mosner.   From a judgment in favor of plaintiff, and an order denying motion for a new trial, defendant appeals.   Conditionally affirmed.

Argued before McLAUGHLIN, PATTERSON, INGRAHAM, HOUGHTON, and SCOTT, JJ.

Myron Sulzberger, for appellant.
Ira B. Wheeler, for respondent.

SCOTT, J.   This is an action for personal services.   Plaintiff is a cousin of defendant, although a good deal younger than he.   When she was about nine years old, living with her mother and stepfather in Bohemia, the defendant, who was married and established in this city as a butcher, wrote to plaintiff's mother suggesting that plaintiff should come to this country and live in his family.   Both parties agree that some such letter was written, but they differ as to its contents; plaintiff claiming that it contained a promise to pay her for her services in the household, while defendant insists that it contained no such promise.   Plaintiff came to this country and entered defendant's family, being supported and provided for by him, and rendering such services as a daughter of the house might reasonably be called on to perform.   Plaintiff further testifies that, when she arrived at the age of 14 years, she told defendant that she wanted to go to work outside and earn money for herself, and that he replied, "I need you in the business and in the house, and I will pay you," that she said that "he gives me $2 a week, and now I am going to work in the store and he will give me $5"; and then she undertakes to quote defendant's language, and represents him as saying, "You are going to work for me in the store, and I will give you $5."   It is upon this alleged promise that the plaintiff has recovered for her services at the rate of $2 per week from the time she entered defendant's household down to the time she became 14 years of age, and at the rate of $5 per week thereafter until she married.   The defendant denies the conversation in toto.   The jury had the advantage of seeing and hearing the witnesses, and the careful and experienced justice who presided at the trial refused to set the verdict aside.   These circumstances argue strongly in favor of sustaining the judgment.

Considering the circumstances and conditions in which the parties lived, it is not incredible that, at 14 years of age, the plaintiff should have expressed the desire to earn money, and, if she did, it is not unreasonable to believe that defendant offered to compensate her for services thereafter to be rendered to him.   It appears that after the alleg-

ed conversation plaintiff did render services, when required, in defendant's shop. She also testified that, when she was 19, shortly before she was married, she asked defendant for the money which was due her, and that he said he would give it to her when she was 21, and that she asked him again when she had attained the age of 21, but he then refused. All this defendant denies, but he does not deny a conversation testified to by plaintiff's husband to the effect that shortly before the marriage defendant said that he would give plaintiff the money which he had promised her. There is here some corroboration of plaintiff's story that defendant had promised to pay her for her services, but it does not even profess to specify any particular sum which was to be paid.

We are thus referred back to the only specific promises, to wit, that which is said to have been made when plaintiff was 14 years of age. That is said to have included a promise of payment for past services at one rate, or for further services at a higher rate. As to the payment of future services, we consider that it carries some elements of probability, and, in view of the corroborative testimony above referred to, we think that the verdict was sufficiently supported. As to the promise said to have been then made to pay $2 a week for past services, we deem it to be improbable, supported only by plaintiff's oath, denied by defendant and without corroboration. As to so much of the recovery we do not consider that the plaintiff sustained the burden of proof.

The judgment will, therefore, be reversed and a new trial granted, with costs to appellant to abide the event, unless the respondent will stipulate to reduce the judgment to $1,715.38, in which event the judgment as modified and reduced will be affirmed without costs. All concur.

---

(51 Misc. Rep. 441.)

### In re McCOY'S ESTATE.

(Surrogate's Court, Cattaraugus County. September, 1906.)

1. WILLS—CONSTRUCTION—ALTERNATIVE INVALID PROVISION.

Testator devised one-third of his estate to his executor in trust to pay the income to testator's daughter for life, and at her decease such income to her issue, and as each of said issue should arrive at 21 years an equal undivided share of the principal; in case the daughter should die leaving no issue which should attain 21 years, one-third of his estate to his son and another daughter, M. By a codicil he provided that his daughter M. should only receive the income of her share during life, and at her death her share passed to her children and husband. The daughter first mentioned died without issue, so that the invalid provision for her issue never became effective. Held, that the provision for the disposition of her share in case of death without issue was not rendered invalid, but became effective on her death.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 992, 993.]

2. EXECUTORS—COMMISSIONS.

